# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF __Westchester__

-----------------------------------------------------------------

Gary Lipson
_____

_____

_____

(Names of Plaintiff(s)/Petitioner(s)

VS

International Business Machines Corporation
_____

_____

_____

(Names of Defendant(s)/Respondent(s)

-----------------------------------------------------------------

RECEIVED

DEC 0 7 2018

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

**Summons**

Index No. _70089/2018_

To the Person(s) Named as Defendant(s) Above:

    PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED to answer the complaint of the plaintiff(s) herein and to serve a copy of your answer on the plaintiff(s) at the address indicated below within 20 days after the service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

    YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the complaint.

Dated: __December 7_____. 20 _18_
      (Date of Summons)

 

Gary Lipson
(Plaintiff(s) name - person bringing on lawsuit)
20 N Broadway, N266
(Plaintiff(s) street address)
White Plains, NY  10601
(Plaintiff(s) city, state, zip)
(203) 583-6737
(Plaintiff(s) telephone no.)

International Business Machines Corporation
(Defendant(s) name - person(s) sued)
1 New Orchard Road
(Defendant(s) street address)
Armonk, NY  10504-1722
(Defendant(s) city, state, zip)

Venue:    Plaintiff(s) designate(s) __Westchester__ County as the place of trial.  The basis of this designation is: (Enter County above; then select one category below, listing specific County)

       ☒    Plaintiff(s)' Residence in __Westchester__ County.
       ☐    Defendant(s)' Residence in _____ County.
       ☐    Other -- Describe: _____.

**NOTE:  THIS FORM OF SUMMONS MUST BE SERVED WITH A COMPLAINT**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF Westchester

--------------------------------------------------------------x

Gary Lipson,

Plaintiff,

- against -

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

and

FIDELITY INVESTMENTS INSTITUTIONAL SERVICES COMPANY, INC.

Defendants.

--------------------------------------------------------------x

Index No. 700 87/2017

**COMPLAINT AND
<u>JURY DEMAND</u>**

**PLAINTIFF'S COMPLAINT**

RECEIVED

DEC 0 7 2018

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

GARY LIPSON, pro se

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF Westchester
-------------------------------------------------------------x
Gary Lipson,

Plaintiff,

                                             **Index No.**

- against -

                                             **COMPLAINT AND**
                                             <u>**JURY DEMAND**</u>

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

Defendant.
-------------------------------------------------------------x

       Plaintiff Gary Lipson, pro se, as and for his complaint against defendants International Business Machines Corporation, hereinafter referred to as "IBM", alleges upon knowledge as to himself and otherwise upon information and belief, as follows:

## NATURE OF THE ACTION

       This is action alleges Defendant International Business Machines Corporation (hereinafter "IBM"), through its layoff and hiring practices, violated (1) the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C. § 621 et seq.; and (2) the New York State Human Rights Law §§ 296.1, 296.3-a and 296-c.  Over the last several years, IBM has been in the process of systematically discriminating against older employees in order to build a younger workforce. Between 2012 and the present, IBM has laid off or otherwise discriminated against at least 20,000 employees over the age of forty (40). Such discriminatory layoff and hiring practices constitute unlawful discrimination under the ADEA and state antidiscrimination law.

## PARTIES

1. Plaintiff, Gary Lipson, previously an employee of the Defendant IBM, and is a person residing in White Plains, New York.

2. Upon information and belief, Defendant, Business Machines Corporation, hereinafter referred to as "IBM", is a limited liability partnership organized under the laws of the State of New York, with its principal place of business in Armonk, New York.

3. Upon information and belief, IBM is a corporation organized under the laws of the State of New York, with its principal place of business in Armonk, New York.

## JURISDICTION AND VENUE

4. This court has jurisdiction pursuant to CPLR §§ 301 and 302, and venue is proper pursuant to CPLR § 503.

## STATEMENT OF FACTS

**IBM**

1. Plaintiff is among thousands of IBM employees to be laid off recently, as the result of a shift in IBM's personnel focus to the generation of workers referred to as "Millennials" (which IBM defines as the generation born after 1980) that began in approximately 2012. At that time, IBM began a program to reform itself into a leading company in the fields of cloud services, big data analytics, mobile, security and social media. As a part of this transformation, IBM endeavored to begin heavily recruiting Millennials in order to make the face of IBM younger, while at the same time pushing out older employees. In an article published by ProPublica following an investigation of IBM's hiring practices,

ProPublica reported that it estimates that "in the past five years alone, IBM has

eliminated more than 20,000 American employees ages 40 and over, about 60 percent of

its estimated total U.S. job cuts during those years." Peter Gosselin and Ariana Tobin,

Cutting 'Old Heads' at IBM, ProPublica (March 22, 2018),

https://features.propublica.org/ibm/ibm-age-discrimination-american-workers/

2.  As reported by ProPublica, IBM's shift in focus toward the Millennial workforce came as

"IBM was falling behind . . . by failing to quickly devise innovative uses for the internet

like its new rivals, Google, Facebook, and Amazon." Id. In response to that problem,

IBM's CEO Virginia Rometty "launched a major overhaul that aimed to make IBM a

major player in the emerging technologies of cloud services, big data analytics, mobile

security and social media, or what came to be known inside as CAMS" and "sought to

sharply increase hiring of people born after 1980." Id. Additionally, IBM embraced the

belief that "CAMS are driven by Millennial traits." Id.

3.  Moreover, in 2006 one of IBM's consulting arms issued a paper that referred to workers

in the "Baby Boomer" generation as "gray hairs" and "old heads," stated that "successor

generations . . . are generally much more innovative and receptive to technology than

baby boomers," and advised that "What businesses can't afford to do is simply rehire

their experienced workers and put them back into their old jobs." See, The Maturing

Workforce: Innovation in Workforce Enablement, IBM Business Consulting Services,

https://www-935.ibm.com/services/uk/bcs/pdf/maturingworkforce-feus01291-1.pdf

(2006).

4.  As another expression of IBM's shift in focus to embrace Millennials, at a 2014 IBM

conference called "Reinvention in the Age of the Millennial," IBM announced its intent

to "embrace the 'Millennial mindset'" and announced that "What's good for Millennials is good for everyone." See Reinvention in the Age of the Millennial, https://ibmcai.com/2014/12/16/reinvention-in-the-age-of-the-millennial/ (Dec. 16, 2014).

**PLAINTIFF**

5. Plaintiff, Gary Lipson was rehired by IBM in November 1999. Plaintiff worked for an IBM acquisition in 1986.

6. In 1999, at the time the Plaintiff was rehired by IBM, IBM gave the Plaintiff work credit for prior work dating back to 1986.

7. Upon information and belief, no less than fourteen (14) IBM employees reviewed the assignment of work credit in the 1999-2001 timeframe.

8. The IBM employees that reviewed the assignment of work credit include Aaliya Blaylock, Lesley Troy, Herbert Jerread, Shelia Davis, Shay Dallas, Frank Holland, Janet Hrebin, Anna Glidewell, Megan Lucie, Brenda Price, Grace Reidinger, Ella Rawls, and Joseph Shaw.

9. Plaintiff was rehired by IBM and worked continuously from November 1999 through February 2017 ("Term of Employment").

10. Plaintiff brings this action to recover the substantial monetary losses suffered as a result of IBM's actions taken against the Plaintiff from 2011 and thereafter.

11. In 2011, Plaintiff entered into a leave of absence with IBM to bridge to retirement.

12. In July 2011, an IBM executive, Toshio Mii, informed the Plaintiff in an email that returning to IBM as an employee was not an option.

13. In or about August 2011, IBM informed the Plaintiff that IBM was resetting the Plaintiff's retirement dates and that the Plaintiff was no longer due retirement benefits.

14. In September 2011, IBM agreed to reinstate the Plaintiff.

15. IBM eventually reinstated the Plaintiff on January 4, 2012.

16. The Plaintiff appealed IBM's treatment of Plaintiff's service dates.

17. The Plaintiff exhausted his internal appeals to Defendant in 2012.

18. In December 2016, the Plaintiff was not given a raise eventhough the Plaintiff exceeded business goals for 2016. Upon information and belief, other similarly situated IBM employees were granted raises in 2016.

19. Upon information and believe, a raise was requested in 2016 by the Plaintiff's direct management and the raise was arbitrarily denied by an up-line manager, Jon Knight,

20. In 2017, with no options, the Plaintiff was technically terminated from IBM. Although, Plaintiff voluntarily left the place of employment, it was the implied stress, coercion and undue influence that caused him to resign.

21. As a result of multiple appeals to IBM, or to Plaintiff's age, or to Plaintiff's gender, or to Plaintiff's disability, IBM systematically kept Plaintiff's total compensation at levels substantially below those of other similarly situated IBM employees.

22. Plaintiff was the victim of a premeditated, calculated effort and plan designed to eliminate him from IBM's employ or at a minimum to keep Plaintiff's compensation artificially low.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

23. Plaintiffs timely filed s Charges of Discrimination with the EEOC and received a right to sue on September 11, 2018.

## FIRST CAUSE OF ACTION
(Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.)

5

24. Plaintiff re-allege and incorporates the above paragraphs by reference as if full set forth herein.

25. IBM's conduct in systematically retaliating against Plaintiff due to Plaintiff apealling work assignment dates, age over 40, gender, and/or disability constitutes discrimination in violation of the ADEA. IBM's violation of the ADEA has been knowing and willful.

26. As a direct and proximate cause of IBM's discrimination, Plaintiff terminated his employ with IBM rather than be at the receiving end of continued bad acts by IBM.  502(a)(1)(b) authorizes an individual to institute a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. 29 U.S.C. § 1132(a)(3).

27. Plaintiff is qualified as membership in a "protected class" Plaintiff was subject to the adverse action by IBM and the Plaintiff was clearly and arbitrarily discriminated against.

28. Under the circumstances, given the length of tenure with IBM, the age of the Plaintiff highlighted the severity of IBM's actions give at least minimal support to an inference of discrimination under the ADEA.

29. The Plaintiff has sustained a distinct and qualified "adverse and material change" in the terms of his employment with IBM.

30. The ADEA, specifically protects the Plaintiff employee from such reduction in wages, benefits and/or pension.

31. In the instant matter, the Defendants actions in September 2011, are defined as "adverse employment action."

## SECOND CAUSE OF ACTION

## Violation of the Human Rights Law and Title VII
(New York Human Rights Law, N. Y. Exec. Law § 290 et seq. and 42 U.S.C. § 2000e, et seq.)

32. Plaintiff re-allege and incorporates the above paragraphs by reference as if full set forth herein.

33. IBM violated the New York Human Rights Law, N. Y. Exec. Law § 290 et seq. by discriminating against Plaintiff due to his "long tenure with IBM", as described above.

34. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and New York State Human Rights Law, Executive Law § 290 et seq. Plaintiff asserts the actions of IBM are directly correlated to and consistent with Plaintiff "age" and long tenure of employment.

35. Plaintiff alleges that during the period from 2011 through 2017, IBM systematically took actions that were retaliatory and discrimination in nature that lead to a constructive termination of the Plaintive by the IBM in February 2017.


## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment as follows:

1.    Count I - Award compensatory damages, including back pay and front pay through a prospective retirement age of 65 and punitive damages of not less than $150,000;

2.    Count II - Award compensatory damages, including back pay and front pay through a prospective retirement age of 65 and punitive damages of not less than $150,000;

3.    Issue injunctive relief in the form of an order directing IBM to comply with the ADEA and applicable state law; and

7

3.     Other relief, together with the above relief, that this Court issue a judgment against all Defendants for costs, fees, attorneys' fees, and interest and such other legal or equitable relief that is appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to 4102 of New York Practice Law and Rules, the Plaintiff hereby demands trial by jury in this action of all issues so triable.

Dated:   December 7, 2018

BY _____

GARY LIPSON
Pro-se Plaintiff

## VERIFICATION BY DEFENDANT

I, Gary Lipson, Pro-Se, states the following pursuant to the penalty of perjury:  I am the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters, I believe them to be true.

GARY LIPSON, pro se

Dated: December 7, 2018

Sworn to before me this 7th day of December 2018

Notary Public:

MOHINDRA N RAJPAL
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01RA6009562
Qualified in West Chester County
My Commission Expires June 29, 2022